CLIFFORD AND PAUL R. BROWN v. LUTHER KNUTSON.[1]

January 3, 1930.

Nos. 27,557, 27,558.

[1]Reported in 228 N. W. 752.

124

*Galen E. Bush,* for appellant.
*M. T. O'Donnell,* for respondents.

HOLT, J.

Appeal by defendant from orders denying his motions in the alternative for judgment notwithstanding the verdicts or new trials.

The two actions were tried together. The one was brought by the father in behalf of the minor son, Clifford Brown, for injuries received when the motorcycle upon which Clifford was riding was struck by an automobile driven by defendant at the intersection of Twentieth avenue west with First street in Duluth, Minnesota. The other action was brought by the father for loss of the son's earnings and expenses incurred on account of the injuries to his son. It will not be necessary to refer to the latter action as its decision must follow the one in Clifford's case.

In the afternoon of July 14, 1928, defendant was driving east on First street and Clifford north on Twentieth avenue. Both were traveling upon a slight upgrade, in broad daylight, and upon a dry pavement. First street is practically lined with business buildings on the south side. At the time in question the jury could find that some automobiles were parked along the south curb of First street west of its intersection with Twentieth avenue and that immediately east of the intersection on the same side of the street an auto was parked and next to it a truck was backed into the curb; that Clifford looked to the west before he entered the intersection and saw no approaching car, and then, proceeding across at a speed of about seven miles per hour, he turned his eyes to the east to ascertain

whether vehicles were approaching to which he must yield the right of way; and that at the same time defendant was coming towards the intersection at a speed of more than 35 miles per hour, straddling the center line of the street, and striking Clifford's motorcycle when at least its front wheel had passed the center of First street.

There is no question made of defendant's negligence. The jury could consider the speed excessive; he entered the intersection after Clifford was well along into it and in his full view; he did not have the right of way; and he was partly over onto the wrong side of the street. But defendant confidently claims that Clifford's contributory negligence appears as a matter of law. This is based on the testimony of Clifford that his speed was such that he could stop in two feet, that he looked west when 25 feet south of the curb line of First street and saw no car coming; and by the use of photographs defendant contends that his car was then not more than 194 feet west of the line Clifford was going and within the latter's vision. And he also claims that had Clifford looked again, as it is insisted that ordinary care demanded, the motorcycle could have been stopped before defendant crossed Clifford's path. Defendant in these claims and conclusions ignores the parked cars, his own negligence which Clifford was not bound to anticipate, the duty of Clifford to avoid interference with travelers coming from the east, and the difficulty he had in doing so because of the parked automobile and truck to his right. Again, courts as well as juries, in considering testimony of the most truthful witness relative to the measurement or estimates of both space and time, when the witness is on a moving vehicle and has the mind set only upon a safe passage and not upon the exact point in the street he was when he looked this way or that, are apt to arrive at incorrect and unjust conclusions if the estimate is taken as a verity to the inch or foot or the fraction of a second. The location of two moving objects at some particular distance and moment from the point where they converge and collide must be estimated by the triers of fact upon a reasonable view of all the testimony. We have no hesitancy in concluding that it is not established as a matter of law that Clifford was negligent

in the operation of the motorcycle which in any manner contributed to the collision. Coffman v. Kummer, 179 Minn. 120, 228 N. W. 751.

Motor vehicle collision cases are so numerous and so varied in detail that nothing is gained by attempting to cite those which might be claimed controlling here. Defendant cites and relies much on Rosenau v. Peterson, 147 Minn. 95, 179 N. W. 647; Chandler v. Buchanan, 173 Minn. 31, 216 N. W. 254; and Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145. And plaintiff rests on Hillstrom v. Mannheimer Bros. 146 Minn. 202, 178 N. W. 881. These cases may be helpful but not decisive because of the dissimilarity of circumstances from those here to be considered.

Here the jury could find that Clifford used more than ordinary care in regard to speed, and that he had ascertained that no vehicle was nearer the intersection from his left than 60 feet when at a distance of about 25 feet from the curb line he started to cross. The testimony also warranted the conclusion that he had no reason to apprehend that any automobile would be operated at such excessive speed as was defendant's, for two persons, driving at the speed of 27 to 30 miles per hour, testified that defendant passed them about 200 feet west of the west line of Twentieth avenue and was 100 feet ahead of them when the collision took place; and at that defendant had applied the brakes so hard that his car had practically slid upon a dry brick pavement from the westerly curb line of the avenue to the place of impact.

The court did not err in refusing to charge that if the jury finds "that Brown did not see the automobile in time to avert the collision, and that he did not continue on his course in the expectation that the defendant would give him the right of way, then the rule I have just given you respecting right of way is not important." Obviously one, who about to cross at a street intersection looks to his left without seeing anyone approaching from that direction and none is in fact nearer than he, has the right of way over those coming from his left.

Clifford was awarded $5,880 damages. Defendant asserts the amount to be so excessive as to indicate passion and prejudice in-

fluenced the jury. The motorcycle was practically destroyed, and from the evidence it may be surmised that the jury included $80 for damages on that account. Clifford received a severe injury, three bones in the pelvic region being fractured. They have healed but not in perfect alignment. There is a dispute between the medical witnesses as to the permanent result of this upon the functions of the urinary organs. The trial took place nearly six months after the injury, and Clifford testified to pain in the pubic region and dribbling of urine. He also claims difficulty in walking and even in sitting for any length of time in the same position. There is medical opinion that the results of the injury are permanent, while there is also that he now is fully restored. Undeniably he suffered great pain the five weeks he was strapped in the "Bradford Frame" while the fractures united. If Clifford, 20 years old, must go through life afflicted with dribbling of the urine as one doctor deemed likely, the damages cannot be regarded as high. The verdict, approved as it is by the trial court, cannot be held by us so excessive as to warrant a new trial.

The orders are affirmed.

