JOSEPH MARTIN v. JOHN REIBEL, *d. b. a.* WHITE BEAR TAXI COMPANY, AND ANOTHER.[1]

October 22, 1948.

No. 34,696.

---

[1]Reported in 34 N. W. (2d) 290.

*Maugridge S. Robb* and *Francis W. Van Eps,* for appellant.
*Sexton & Kennedy* and *Vincent P. Courtney,* for respondents.

MATSON, JUSTICE.

Appeal from an order denying plaintiff's motion to vacate a directed verdict and grant a new trial.

On October 7, 1945, at about 5:30 p. m., plaintiff, unaccompanied, was driving his automobile in a northerly direction over a concrete highway called the Centerville road at a point about one and three-

fourths miles west of the city of White Bear Lake where such road intersects highway No. 96 at right angles. The latter, a "through highway" protected by stop signs, runs east and west and has a tarvia surface about 30 feet wide. The Centerville road is 18 or 20 feet wide. Simultaneously, the defendant Carl Huston, as the employe of defendant Reibel, was driving the latter's taxicab in a westerly direction over highway No. 96 and over said intersection, where the two vehicles collided. Taking, as we must, the view of the evidence most favorable to plaintiff, it appears that plaintiff in approaching from the south brought his automobile to a complete stop approximately opposite the stop sign, located about 25 or 30 feet from the intersection. He then looked to the right, where his view over highway No. 96 extended unobscured for a distance of about 500 feet to the east or to a point where there is a dip in that road of sufficient depth to conceal an automobile approaching from the east. No car appeared in his line of vision. He then looked to the left and saw no traffic. Without looking again either to the right or to the left, he started his automobile and entered the intersection. At a point in the northeast quadrant of the intersection and about 50 to 55 feet from the place where he had stopped to observe the presence of any approaching traffic, his automobile was violently struck by the taxicab coming from the east. At the moment of impact, plaintiff estimated his speed to be from 10 to 15 miles per hour. As a result of the collision, plaintiff was injured and his automobile was deposited in the northwest corner of the intersection, where it stood facing in a direction opposite to that in which it had been traveling. Defendant's taxicab, which from the point of impact left skid marks extending to the east a distance of 60 to 70 feet, came to a stop after striking plaintiff's car near the edge of the intersection to the south of plaintiff's car.

■■■ The trial court granted defendants' motion for a directed verdict on the ground that plaintiff was guilty of contributory negligence as a matter of law, in that, with a clear and unobstructed view of highway No. 96 to the east for about 500 feet at the time he entered the intersection, he either failed to look or failed to see

the taxicab then approaching. In this the trial court was in error. M. S. A. 169.20, subd. 3, provides that the driver of a vehicle shall stop preparatory to entering a through highway and "shall yield the right of way to other vehicles * * * which are approaching so closely on the through highway as to constitute an immediate hazard, * * *." Plaintiff, in making a stop preparatory to entering the intersection, looked to his right but saw no vehicle approaching in the area extending 500 feet eastward to the dip in highway No. 96. Are we under the circumstances to hold that he was negligent in not seeing the taxicab? Obviously not. The look-and-not-see-*that-which-is-in-plain-sight* rule, as applied to a motorist who has made observations preparatory to entering an intersection, *must always be tempered with a consideration of surrounding circumstances* which may have obscured or interfered with his vision. Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327. Here, we have the circumstance that 500 feet eastward from the intersection there is a dip in highway No. 96 which may have concealed the approaching taxicab. In other words, defendants' vehicle may not have been in plain sight. If the jury accepted plaintiff's testimony that he came to a complete stop and that he thereafter traveled in second gear for only 50 or 55 feet prior to the point of impact, and that he did not attain a speed in excess of 10 to 15 miles per hour, it could also reasonably find that, in the space of time consumed by plaintiff after he had made his initial and only traffic observation and had started forward to cross the intersection, defendants' taxicab traveled at such a high rate of speed that it easily covered the distance from a position of concealment in the dip of the road to the point of collision. The jury could find as a matter of reasonable inference, in the light of the length of the skid marks made by the taxicab and the force of the impact, as well as other circumstances, that defendant Huston was in fact traveling at a speed greatly in excess of the 45 miles per hour to which he testified. The jury could likewise reasonably find that the taxicab was concealed from plaintiff's view

by the dip in the road. In Mattfeld v. Nester, 226 Minn. 106, 119, 32 N. W. (2d) 291, 301, we said:

"* * * Ordinarily, where the defendant is out of sight of the driver crossing an intersection, as where defendant is behind an obstruction or in a dip of the road and it appears to plaintiff as a result of observation that it is safe to cross and would be but for defendant's unanticipated speed or other negligence, the question whether plaintiff was guilty of contributory negligence is one of fact for the jury."

■ Defendants seek, however, to eliminate all uncertainty as to the validity of their contention by a computation of speeds, time, and distance, to show that the taxicab could not possibly have been as far away as the dip in the road and that it must therefore have been in plain sight. Mathematical computation in determining the rate of speed and the distance traveled by two vehicles immediately prior to their collision, as a basis for establishing contributory negligence or the absence of negligence as a matter of law, is rarely decisive and is wholly unsatisfactory where based upon factors which are dependent, as here, upon the interpretation placed upon conflicting evidence. Spencer v. Johnson, 203 Minn. 402, 281 N. W. 879; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327.

■ Plaintiff admits that after he made his initial traffic observations he entered and proceeded to cross the intersection without again looking either to the right or to the left. Whether he should have looked again was a question of fact for the jury. A motorist, having stopped and looked to his right and to his left preparatory to entering an intersection with a through highway, is not guilty of contributory negligence as a matter of law because he does not look again before entering or after starting across the intersection. Observation of traffic approaching an intersection having once been made, due care as a matter of law is not to be determined by the absence or by the frequency, the time, or the place of subsequent observations. Jeddeloh v. Hockenhull, 219 Minn. 541, 18 N. W. (2d) 582; Guthrie v. Brown, 192 Minn. 434, 256 N. W. 898.

■ Defendants can take little comfort in the rule that if the trial court erroneously directs a verdict on the ground of contributory negligence as a matter of law, its order must, nevertheless, be upheld if the record will not sustain a finding of negligence. Olson v. Evert, 224 Minn. 528, 28 N. W. (2d) 753; Mix v. City of Minneapolis, 219 Minn. 389, 18 N. W. (2d) 130. Obviously, we do not have that situation here. As already noted, the jury could reasonably find that plaintiff came to a complete stop and that defendants' vehicle was then in the dip of highway No. 96 at a point over 500 feet east of the intersection. From these circumstances, the jury could reasonably infer that the taxicab would not have reached the point of impact unless it was driven at an excessive speed. There would also be a question of fact as to whether defendant Huston maintained a proper lookout with respect to traffic already upon the intersection and whether he kept the taxicab under proper control.

Plaintiff's motion for a new trial should have been granted. The order of the trial court is reversed.

Reversed.

