# ERNST RISTOW v. HENRY VON BERG.[1]

October 24, 1941.

No. 32,898.

*Freeman & King,* for appellant.

*Everett L. Young* and *Streissguth & Gislason,* for respondent.

[1]Reported in 300 N. W. 444.

Julius J. Olson, Justice.

Plaintiff's intestate died as result of injuries received in an automobile collision at a township highway crossing. As representative of his estate, plaintiff recovered a verdict for $7,500 against defendant, driver and owner of the car which collided with the one owned and driven by decedent. The usual alternative motion for judgment or new trial was made, the former denied, the latter conditionally granted unless plaintiff should consent to reduction of the verdict to $6,840. Plaintiff consented, and defendant appeals.

Between five and six o'clock in the afternoon of May 2, 1940, decedent was driving his car south upon a township road. Visibility was good. With him were his wife and daughter Irene, both occupying the back seat. He drove at a moderate rate of speed, 30 to 35 miles per hour. The north-south road upon which he was driving is crossed at right angles by another township road running east and west. Both roads are of equal rank. There is no stop sign. Approaching the intersection from the north the highway runs through a cut, but an alert driver on the north-south highway can see traffic from the west 220 feet distant when within 180 feet of the intersection and for a distance of 340 feet when within 113 feet of the intersection. Irene testified that her father had reduced his speed to about 20 to 25 miles per hour before entering the intersection; that when they came to the south end of the mentioned cut she looked to the west and saw nothing, not even dust; that she looked to the east, then again to the west as they came into the intersection, "and then all I seen was the [defendant's] car went into us and that is all I seen or know about it." The impact occurred after decedent's car had passed beyond the center of the intersection.

After the collision defendant's car was within 13 inches of a power line pole, facing east, about 39 feet southeast of the center of the intersection. Decedent's car was found 72 feet southeast of the center of the intersection and about 15 or 20 feet southeast

of the power pole. A three-eighths-inch guy cable on the south side of the power pole had been snapped, and there was a corresponding mark on the rear part of the top of decedent's car. Photographs lucidly illustrate that defendant's car was smashed in front, and that decedent's was smashed near its center on the right side at a point where the two doors meet. Decedent's wife was killed instantly, and his daughter Irene was found walking around in a dazed condition after the collision. Decedent was rendered unconscious and died three days later.

Soon after the collision witnesses arrived and saw conditions as they were. Several of them testified that they saw skid marks made by defendant's car starting 15 feet west of the intersection and continuing at an angle to the southeast from the point where the collision took place to the edge of the shoulder of the intersection. They said that there was a gouge in the gravel several feet long, about eight to ten inches wide, and two and one-half to three inches deep, extending in a southeasterly direction from the center of the intersection, made by decedent's car when smashed into and shoved easterly by the impact of defendant's car. Decedent's car was a complete wreck. There was no track or mark made by decedent's car from this gouge to where it finally came to rest save the broken guy cable, indicating, as claimed by plaintiff, that it had been hurled through the air that distance.

Defendant contends (1) that the record establishes decedent's contributory negligence as a matter of law; and (2), as a basis for new trial, that the verdict is so excessive as to show passion and prejudice on the jury's part.

■ Defendant's negligence as to excessive speed and failure to keep a proper lookout for traffic is abundantly shown. The question of decedent's negligence as a contributing factor to the disaster presents, we think, a fact issue. The essential facts have been related. The triers of fact have chosen "not only between conflicting evidence but also between opposed inferences." There is here no " 'undeniable preponderance against' the finding."

Hence the rule follows that " 'where the evidence is conflicting, it is the duty of the triers thereof to determine the facts; and on appeal it is the duty of the court to view the evidence in the light most favorable to the party whose claims' the triers of fact believe." Utgard v. Helmerson, 202 Minn. 637, 641, 279 N. W. 748, 750.

■ Decedent was an industrious man, 52 years old, expectancy 18 years. Two daughters survive him, Irene, 19 years old and living at home, and an older daughter, 22 years old, married and living on a farm not far distant. Both had been recipients of decedent's generosity and helpfulness. The jury could well find that his annual income from the operation of his farm was at least $2,000. The father's guiding hand is gone. His helpfulness and contributions are ended. We think the verdict as originally rendered was not excessive. The court in its memorandum states that the jury was not influenced by passion or prejudice. The record well sustains that view.

Order affirmed.